IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| CLIFFORD EARL COWART, | : |
| Plaintiff, | : |
| VS. | : |
| | :   7 : 03-CV-139 (HL) |
| CAPTAIN GONZALES, et al., | : |
| Defendants. | : |

### RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action is a motion for summary judgment filed on behalf of defendants Fetina Price, Ted Philbin, Larry Faust, Shonette Wade (Kendrick), Royce Dunaway, Willie Flowers, George Payne, and Tomas Gonzales (doc. 119).

Plaintiff, at all times relevant to this lawsuit, was an inmate at Valdosta State Prison. Plaintiff alleges that defendants, employees of Valdosta State Prison and grievance investigators with the Department of Corrections Office of Inmate Affairs and Appeals, violated plaintiff's constitutional rights by religious infringement and retaliation for the filing of grievances.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden

at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

In his original and amended complaints, plaintiff alleges that defendants Captain Gonzales and Sergeant Payne illegally seized unspecified religious material from plaintiff's cell on December 13, 2001, and subsequently defendant Philbin, the Deputy Warden of Care and Treatment, had such religious materials destroyed.

Plaintiff states that he filed grievance no. 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 for the alleged illegal seizure of his religious materials. Plaintiff states that defendant Philbin refused to allow the religious materials to be removed from prison storage and released to friends of plaintiff to prevent the destruction of the materials. As a result of the destruction of the religious material, plaintiff filed grievance no. 537-

02-0069.

Plaintiff states the defendant counselor Flowers informed him that grievance no. 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 regarding the seizure of the materials had been denied, but failed to forward plaintiff's supporting documents with the appeal of such grievance. Plaintiff alleges he then filed grievance no. 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 to retrieve such supporting documentation.

Plaintiff alleges that defendant Dunaway, an investigator with the appeals unit of inmate affairs and appeals, interviewed plaintiff about grievance no. 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 regarding the seizure of the religious materials on January 18, 2002. Plaintiff alleges that defendant Dunaway "tricked" him into signing a waiver of the grievance, but plaintiff admits he did not read the release form prior to signing it.

Plaintiff alleges that defendant counselor Wade (a/k/a Kendrick) submitted the paperwork that removed plaintiff from his GED class in retaliation for the grievances that plaintiff submitted against these other defendants, and that defendant Captain Gonzales participated in the removal. In support of this allegation, plaintiff states that he was removed from the class shortly after he filed the grievances. Plaintiff states he was told by an unspecified individual on January 8, 2002, that defendant Wade was "mad about a second grievance" and had requested that Ms. Battles (the GED teacher) or Mr. Donahue (a special education teacher) do the paperwork to have plaintiff removed from the GED class.

Plaintiff also alleges that religious materials that had been sent to him through the mail were withheld from him. Specifically, plaintiff states that on May 13, 2002, defendant Officer Price refused to give plaintiff a bible study course that had come in the mail. As a result, plaintiff filed grievance no. 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. Plaintiff alleges that defendant investigator Faust interviewed the

plaintiff about the grievance on July 12, 2002, and somehow "coerced, intimidated, and caused [plaintiff] to be concerned for his safety and well-being by drawing [plaintiff's] attention to things that could happen to inmates in a prison environment who caused trouble by raising issues that are not in the State's best interest."

*Failure to Exhaust*

Defendants assert that plaintiff failed to exhaust his administrative remedies with regard to several of his claims.

Defendants have submitted the affidavit of Gail Knowles (doc. 121 Exhibit A), who is the Administrative Assistant at Valdosta State Prison, and as such, is responsible for maintaining records of grievances filed at Valdosta State Prison. According to her affidavit, within the Georgia Department of Corrections, inmates have a administrative grievance process whereby an inmate can bring forth any complaints against any officer/staff member or any other complaint whatsoever, including but not limited to any complaint regarding an inmate's property, including mail related issues. (Doc. 121 Exhibit A, para. 3; Exhibit C, para 3). The inmate may request a grievance form, and the grievance is subsequently investigated by or on behalf of the Warden. (Doc. 121 Ex. A, para. 3; Exhibit C, para. 3). The Warden will subsequently respond to the Inmate's complaint. If the Inmate is satisfied with the Warden's response, no further action is taken. If the Inmate is not satisfied, the Inmate may appeal the Warden's decision to the Georgia Department of Corrections Inmate Appeals Unit, which Unit investigates and makes the final ruling on any complaint at the administrative level. (Doc. 121 Ex. A, para 3; Exhibit C, para. 3). Thus, an inmate has exhausted his administrative remedies when his complaint has been finally ruled upon by the Inmate Appeals Unit.

Gail Knowles further opines that the Plaintiff did not exhaust his administrative remedies as to

grievance no. 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 concerning the seizure of his religious materials by Defendants Payne and Gonzales, but dropped such grievance at the Appeal level. (Doc. 121 Exhibit A, para 9). Plaintiff himself admits to dropping such grievance, although he states that the rationale was that he failed to read the waiver form. Gail Knowles further opines that Grievance no. 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, concerning the destruction of Plaintiff's property, was filed out of time and was therefore not exhausted by the Plaintiff. (Doc. Exhibit A, para 11, Exhibits Q-S).

42 U.S.C.§ 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

Plaintiff has not satisfied the exhaustion requirement of § 42 U.S.C. 1997(e). The clear mandate of Alexander v. Hawk is that a prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this. Given these circumstances, the undersigned believes that dismissal is mandated for failure to exhaust administrative remedies.

The court must follow the dictates of circuit law. This circuit, in interpreting the PLRA, has determined that exhaustion is now a pre-condition to suit, and the courts can no longer simply waive those requirements where it is determined the remedies are futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir.1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to

have exhausted his administrative remedies.").

Thus, as the Plaintiff failed to exhaust his administrative remedies against Defendants Gonzales, Payne and Philbin as to the allegations of seizure and destruction of his religious materials, these Defendants are entitled to have those claims dismissed against them pursuant to the provisions of the PLRA.

Plaintiff alleges that Gonzales had Plaintiff removed from the GED class out of retaliation for filing other grievances.  Grievance no. 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 as filed by Plaintiff is attached as Exhibit G and concerns Plaintiff's complaint of threatened removal by Defendant Gonzales. (Doc. 121 Exhibit A, para 8; Exhibit G); a copy of the Appeal response to such grievance is attached as Exhibit H. (Doc. 121 Exhibit A, para 8; Exhibit H). These records indicate that the Plaintiff's appeal of such grievance was not exhausted because it was filed out of time and therefore was terminated by the Georgia Department of Inmate Affairs and Appeals. (Doc. 121 Exhibit A, para 8).

Therefore, it appears that defendant Gonzales is also entitled to have the claims of retaliation against him dismissed as well for plaintiff's failure to exhaust.

*Qualified Immunity and Retaliation*

Defendants assert that they are entitled to the defense of qualified immunity for the actions of which plaintiff's complains.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1992), held that the complaint must be dismissed whenever a defendant asserts the defense of qualified immunity unless the plaintiff is able to demonstrate that the legal norms allegedly violated by the defendant were violations of clearly established constitutional rights.  In fact, the Eleventh Circuit has provided more guidance in another § 1983 case in stating that qualified immunity can be stripped only when all reasonable

government actors in the defendant's place would know that the discretionary conduct in question violated federal law. Adams v. Poag, 61 F.3d 1537 (11 th Cir. 1996).

Once properly asserted, there is entitlement to qualified immunity if either (1) the applicable law was not clearly established at the time of the alleged violation, or (2) plaintiff fails to demonstrate the existence of genuine issues of material fact as to whether the official's actions violated the clearly-established law. Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988).

The Eleventh Circuit has held that in order to overcome the defense of qualified immunity, the plaintiff  "must show that defendants violated [plaintiffs'] clearly established federal rights and that every reasonable officer faced with the circumstances facing these defendants would have known that defendants' acts were unlawful." Hansen v. Soldenwagner , 19 F.3d 573, 575 (11th Cir. 1994).

Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff. See, e.g., Suissa v. Fulton County, 74 F.3d 266, 269 (11th Cir.1996); Barnette v. Folmar, 64 F.3d 598, 600 (11th Cir.1995); Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 n. 3 (11th Cir.1994).

   The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West,  320 F.3d 1235, 1248 (11th Cir.2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley,  532 F.3d 1270, 1276 (11th Cir.2008). To prevail on an action alleging that prison officials retaliated against an inmate for making such complaints, the inmate must establish the following: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person

of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Id.*

Assuming without deciding that plaintiff has satisfied the first two prongs of the retaliation analysis as summarized above, plaintiff cannot prove the third prong in the face of the evidence submitted by defendants.

The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because the prisoner complained of some of the conditions of his confinement. Smith at 1278; Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999). The Eleventh Circuit followed the reasoning in Thaddeus-X by finding that most courts resolve this subjective motivation issue under the Mt. Healthy burden-shifting formula. Id. at 399 n. 14. See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). At a trial held under the Mt. Healthy formula,

> [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for judgment as a matter of law or prior to trial on] summary
> judgment.

Thaddeus-X, 175 F.3d at 399 (citation omitted). Smith at 1278.

Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Prison officials are therefore "accorded latitude in the administration of prison affairs." Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). This latitude includes "the withdrawal or limitation of many [inmate] privileges and rights." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (quotation marks and citation

omitted). This means that an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's "status as a prisoner or with the legitimate penological objectives of the corrections system." Id.

The question for the court becomes whether a reasonable fact finder, a jury, would have to find that the defendants would have taken the adverse action against plaintiff "even in the absence of the protected conduct," i.e., the submission of grievances. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Thaddeus-X, 175 F.3d at 388 n. 4. Smith at 1279.

*Defendant Faust*

Plaintiff alleges that on May 13, 2002, defendant Price refused to give plaintiff a bible study course that had come in the mail. Plaintiff consequently filed grievance 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. Plaintiff then alleges that defendant investigator Faust interviewed plaintiff regarding this grievance on July 12, 2002, and "coerced, intimidated and caused" plaintiff to be concerned about his safety and well-being by pointing out to plaintiff "all the bad things that can happen to inmates in a prison when they cause trouble by raising issues that are not in the state's best interest."

The grievance, appeal response and notes by defendant Faust are submitted by defendants (doc. 121, Exhibits U-W). According to Faust's affidavit, his investigation revealed that plaintiff did admit to receiving the mail in question on the day after the alleged refusal by Price to give him the mail. (Doc. 121, Exhibit T). Plaintiff has not submitted any evidence to the contrary. Moreover, plaintiff's claim was substantiated in part by the Warden. (Doc. 121 Exhibit U).

Defendant Faust denies retaliating against plaintiff in anyway, denies coercing plaintiff to drop his grievance appeal against defendant Price. (Doc. 121 Exhibit T).

A prisoner must allege more than his personal belief that he is the victim of retaliation. Johnson

v. Rodriguez, 110 F.3d 299, 310 (5th Cir.1997). Conclusory allegations of retaliation are insufficient. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); Bennett v. Goord, 343 F.3d 133, 137 (2nd Cir.2003) (because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

Plaintiff has failed to do more than make conclusory allegations. He has not submitted an affidavit or other competent evidence that supports his conclusion that Faust retaliated against him. His complaint is not verified, and neither is his response to the motion for summary judgment.

Therefore, it appears to the undersigned that defendant Faust is entitled to summary judgment.

***Defendants Flowers and Dunaway***

Defendant Flowers admits that, due to an oversight on his part, he initially failed to provide the Plaintiff with certain attachments to the grievance concerning the seizure of Plaintiff's materials. (Doc. 121 Exhibit I, para 3). However, Defendant Flowers states that as soon as he learned of his oversight, he immediately called the Plaintiff back in and gave him the attachments. Defendant states that not only did he not intentionally withhold the documentation, but further that he immediately admitted to his oversight in response to Grievance no. 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. A copy of Defendant Flowers' admission of his mistake as contained in such grievance is attached as Exhibit J. (Doc. 121 Exhibit I, para 3; Exhibit J).

Defendant Flowers further states that as he was not named in the grievance concerning the seizure of Plaintiff's materials, he would have had no motive to retaliate against the Plaintiff and did not in fact retaliate against Plaintiff. (Exhibit I, para 4). Plaintiff himself chose to drop the grievance concerning the seizure of his religious materials.

Defendant Dunaway states that although he has no recollection of investigating the Plaintiff's

grievance concerning the seizure of his religious materials, Defendant states that he has never tricked any inmate into dropping a grievance or appeal, nor retaliated against any inmate for filing a grievance. (Doc. 121 Exhibit K, para 4). Defendant Dunaway states that it is his job to thoroughly investigate each and every grievance to which he is assigned; Defendant states that he would have no motive to retaliate against this Plaintiff for filing any grievance, as the grievance was not against Defendant Dunaway, and he is not affiliated with any particular prison. (Doc. 121 Exhibit K, para 4).

A prisoner must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir.1997). Conclusory allegations of retaliation are insufficient. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); Bennett v. Goord, 343 F.3d 133, 137 (2nd Cir.2003) (because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

Again, plaintiff has failed to counter the affidavits and other evidence submitted by defendants. Without more than his personal belief that these defendants retaliated against him, plaintiff's claims against defendants Flowers and Dunaway must fail.

*Defendant Wade*

Defendant Wade admits that the decision to remove Plaintiff from the GED program was made upon the recommendation of Defendant Wade, but was the ultimate decision of the Classification Committee, pursuant to policy SOP IIC02-0004. (Doc. 121 Exhibit A, para 3; Exhibit B; Exhibit E, para 3, Exhibit L, para 3). Defendant Wade freely admits that she did in fact make the recommendation to remove Plaintiff from the GED class, as he had already completed same in 1998

11

and spaces were needed for other inmates who had not yet completed their GEDs; it was Defendant Wade's duty pursuant to policy to make that recommendation. (Doc. 121 Exhibit E, para 5).

Records indicate that the Plaintiff was removed from his GED class in January 2002, although the records do not reflect that the Plaintiff served in any capacity as a teaching assistant. (Doc. 121 Exhibit A, para 5; Exhibit E, para 5).  A copy of the Classification Committee form reflects that the determination to remove the Plaintiff from the GED class was made by the Committee as a whole; the chairperson of such committee was Danny Waters, Chief Counselor. (Doc. 121 Exhibit A, para 6; Exhibit E, para 6; Exhibit F, para 6). A copy of Plaintiff's GED, obtained in 1998 was attached the to determination. (Doc. 121 Exhibit A, para 6; Exhibit E, para 6; Exhibit F, para 6). Danny Water's affidavit reflects that the determination of the committee, not Defendant Wade, to remove the Plaintiff from class was based upon the fact that the Plaintiff had already completed his GED, and because space in the class was limited.  (Doc. 121 Exhibit F, para 6).

It was ultimately the committee's decision to remove Plaintiff from the GED class. (Doc. 121 Exhibit E, para 6; Exhibit F, para 6). Pursuant to Standard Operating Procedure IIC02-0004, during an inmate's incarceration, the inmate is assigned to various work details or classes based upon a determination of the classification committee. (Doc. 121 Exhibit A, para 3; Exhibit B; Exhibit F, para 4; Exhibit E, para 3-4).  It is a counselor's responsibility to make his/her recommendation as to the appropriate assignment of an inmate based upon an assessment of the inmate's work history, educational history, etc. (Doc. 121 Exhibit A, para 4; Exhibit F, para 4; Exhibit E, para 4). It is the duty of the classification committee as a whole to make the final determination as to whether to change any inmate's classification assignment. (Doc. 121 Exhibit A, para 4; Exhibit F, para 4; Exhibit E, para 4).

Defendant Wade has submitted evidence that she would have taken the action to recommend plaintiff's removal from the G.E.D. class regardless of any retaliatory motive on her part. She has provided evidence that plaintiff already had a G.E.D. Moreover, her recommendation was validated by the classification committee based upon the fact that plaintiff had completed the G.E.D. program and his slot was needed for inmates who had not yet completed the program. Even assuming that plaintiff can prove a retaliatory motive on Wade's part, he has failed to counter in any way the evidence that she would have taken the same action without retaliatory motive. Therefore, defendant Wade is entitled to summary judgment.

*Defendant Price*

In his complaint, Plaintiff maintains that defendant Price unconstitutionally withheld religious material from him for one day. Defendants assert that even if Defendant Price had withheld Plaintiff's mail for one day, same would not be a constitutional violation; defendants further assert that Plaintiff has shown no evidence supporting his claim that he was ultimately denied any access to his religious mail; nor even any proof that the mail was actually withheld. In fact, the investigation into this matter revealed that Plaintiff did in fact receive the mail at issue the very next day. Price asserts that plaintiff has only made vague and conclusory allegations of religious infringement against her. Plaintiff has not specifically addressed this issue in his response to the motion for summary judgment other than to restate that his religious materials had been withheld by defendant Price in violation of the constitution. (Doc. 125).

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides, in pertinent part, that government shall not prohibit the free exercise of religion. U.S. Const. amend. I; Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213

(1940). Prisoners retain their First Amendment rights, including rights under the Free Exercise Clause. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quotations omitted).

An inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his religion." Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir.1996). Plaintiff's claim against Price is insufficient because his allegations did not suggest that the withholding of the religious materials for one day interfered with his ability to practice his sincerely held religious beliefs or that the withholding for one day of his religious bible study course denied him a reasonable opportunity to pursue his religion of choice. Therefore, to the extent Plaintiff claims a violation of his First Amendment right to freely exercise his religion, his claim should be dismissed.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion for summary judgment be **GRANTED** for all the reasons abovesaid.[1] Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.
**SO RECOMMENDED**, this 24th day of February, 2009.

    //S Richard L. Hodge

---

[1] Defendant Hart has filed a motion for summary judgement at Doc. 134 that remains pending; once plaintiff has responded to the motion, the undersigned will at that time consider the motion on its merits.

                                              RICHARD L. HODGE  
msd                                      UNITED STATES MAGISTRATE JUDGE